UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PANHANDLE EASTERN PIPE LINE, COMPANY, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:16-cv-02288-JMS-DLP |
| JOSEPH F. PLUMMER, et al., | ) ) | |
| Defendants. | ) ) | |

## ORDER

The focus of this lawsuit is two pipelines—the "100 Line" and the "400 Line"—owned by Plaintiff Panhandle Eastern Pipe Line Company, L.P. ("Panhandle") that, pursuant to a 1931 right of way grant, traverse Defendants Joseph and Deborah Plummer's property in Pittsboro, Indiana ("the Property"). Panhandle alleges that the Plummers have failed to remove various obstructions from the 100 Line right of way as required by two agreements they reached in 1999 (collectively, "the 1999 Agreements"). These include a settlement agreement ("the Settlement Agreement") and an "Amendment of Easement Agreements" ("the Easement Amendment"), which altered the parties' rights to the pipeline rights of way from the terms of the original 1931 grant. Panhandle seeks damages and a permanent injunction prohibiting the Plummers from interfering with Panhandle's rights to the easements. The Plummers have counterclaimed, alleging that the 1999 Agreements were modified by an oral agreement in 2016 and seeking a declaration that Panhandle has abandoned the 100 Line.

The parties have now moved for summary judgment. [Filing No. 65; Filing No. 71.] Panhandle has also moved for discovery sanctions. [Filing No. 74.] The first obstacle for the Plummers is that, as they concede in their response brief, they previously released their

abandonment claim in the 1999 Settlement Agreement. Moreover, the 2016 oral contract fails under the statute of frauds, and the undisputed evidence shows that the Plummers have violated the Settlement Agreement and the Easement Amendment. Therefore, as described more fully below, the Court **GRANTS IN PART** Panhandle's Motion for Summary Judgment, [Filing No. 71], **DENIES** the Plummers' Motion for Summary Judgment, [Filing No. 65], and **DENIES AS MOOT** Panhandle's Motion for Sanctions, [Filing No. 74].

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In

other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not suffice to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-

movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail" on summary judgment. *Id.* at 648.

## II.
### EVIDENTIARY ISSUES

The parties have raised several evidentiary issues that require attention before the Court may address the merits of the parties' claims. First, Panhandle moves to strike Mr. Plummer's declaration pursuant to the sham affidavit doctrine. [Filing No. 96 at 20-21.] As explained below, the Court concludes that Panhandle is entitled to summary judgment regardless of whether it considers the declaration. The Court therefore **DENIES AS MOOT** Panhandle's request to strike.

Second, Mr. Plummer has filed a declaration pursuant to Federal Rule of Civil Procedure 56(d) stating that he has not been able to take the deposition of an individual who witnessed the alleged oral contract between Mr. Plummer and Panhandle and is seeking "clarification of several incomplete and/or evasive answers and responses" from Panhandle's counsel. [Filing No. 65-1 at 3.] Where a nonmovant demonstrates that "it cannot present facts essential to justify its opposition" to summary judgment, Federal Rule of Civil Procedure 56(d) allows the Court to defer or deny the motion for summary judgment, allow more time for discovery, or issue an "appropriate order." Fed. R. Civ. P. 56(d). There are several problems, however, with Mr. Plummer's Rule 56(d) declaration. First, it was filed not as a nonmovant as required by Rule 56(d), but in conjunction with Mr. Plummer's own Motion for Summary Judgment. Second, nowhere in the declaration or in the Plummers' briefing do the Plummers explain what they would like the Court to do in response to the declaration. Third, Mr. Plummer's response brief—which was filed in part as a nonmovant—does not renew any request for Rule 56(d) relief. Fourth, the party seeking Rule 56(d) relief must set forth "specified reasons" that the party lacks sufficient evidence to oppose summary judgment. The only specified reason given for the Rule 56(d) declaration was

that Mr. Plummer needed to take a deposition of a witness to the alleged 2016 oral contract. But, as explained below, no additional evidence could save the oral contract from its fate under the statute of frauds. The other stated reason is that Mr. Plummer's attorney is seeking "clarification" of certain discovery responses from Panhandle's attorney. That statement is far too vague to justify any Rule 56(d) relief. For these reasons, the Court **DENIES** any relief that Mr. Plummer's Rule 56(d) declaration may be construed to request.

Finally, at multiple points in the Plummers' response brief, the Plummers respond to Panhandle's assertions of fact as follows: "Defendants are without knowledge to admit or deny the contents of Paragraph [X]." [Filing No. 94 at 1-2.] But while an answer to a complaint may properly contain such statements, Fed. R. Civ. P. 8(b)(5), responses to factual assertions on summary judgment must be supported by citations "to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A). "[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation omitted). The Plummers' responses, which indicate that they are "without knowledge" regarding certain facts, demonstrate only that they have failed to controvert Panhandle's factual assertions. The Court deems the Plummers to have admitted Panhandle's factual assertions where they offered such responses. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may[] . . . consider the fact undisputed for purposes of the motion . . . .").

**III.**

**FACTS FOR SUMMARY JUDGMENT**

The following factual background is set forth pursuant to the standards detailed above.[1] The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A. Status of 100 Line & 400 Line

Panhandle owns and maintains four natural gas pipelines that run across easements on the Plummers' Property. [Filing No. 10-1; Filing No. 10-2 at 1-2.] Two of those, the 100 Line and the 400 Line, are at issue in this case. [*See* Filing No. 10; Filing No. 32.] The easements grant Panhandle the right to replace its pipelines and the rights of ingress and egress over the Property. [Filing No. 10-1.] In 1994, Panhandle re-laid the 400 Line, which remains in active service, [Filing No. 10-2 at 1-2; Filing No. 20-1 at 1-2], and decommissioned the 100 Line, [Filing No. 92-3 at 64-65; Filing No. 92-4 at 27]. The 100 Line has been inactive since it was decommissioned in 1994. [Filing No. 92-3 at 65; Filing No. 92-4 at 27.] Panhandle continues to treat the ground above the 100 Line as it would an active pipeline right of way by maintaining above-ground markers, remaining active in Indiana's "one-call system" for construction and digging projects, and issuing notices for clearing activity. [Filing No. 92-2 at 33; Filing No. 92-5 at 40-41.] The inactive 100 Line remains subject to federal regulations set forth by the Federal Energy Regulatory Commission. [Filing No. 92-1 at 2-3 (citing 15 U.S.C. § 717f(b)); Filing No. 92-5 at 33.]

---

[1] Because the Plummers concede that summary judgment is required on their abandonment claim, the Court omits several details that would have been pertinent to that analysis.

### B. 1996 Lawsuit & 1999 Settlement

In 1996, the Plummers sued Panhandle's predecessor (also called Panhandle), alleging that Panhandle damaged the Property when, in 1994, Panhandle undertook a relay and erosion remedy project. [Filing No. 92-6.] The Plummers sought damages, specific performance of certain clean-up work, and declaratory relief, including a declaration that Panhandle had abandoned the 100 Line, which was then called the "200 Line." [Filing No. 92-6 at 9.]

In 1999, the parties settled the Plummers' 1996 lawsuit. [Filing No. 10-2 at 2-7.] As part of the Settlement Agreement, the parties "release[d] any and all claims that have been or could have been asserted in connection with the Lawsuit." [Filing No. 10-2 at 5-6.] The parties also agreed to certain rights and obligations in the Easement Amendment, referenced in the Settlement Agreement. The Settlement Agreement includes a section entitled "Obstructions on Easement":

> 2.1    Plummers agree not to plant any growth (other than traditional agricultural growth) or place any structures or parked vehicles within the defined easements unless they have obtained the prior written consent of Panhandle except as further and specifically set forth in the [Easement Amendment.]
> 2.2    Panhandle shall have the right to clear its rights of way over all pipelines of all growth and obstructions upon reasonable prior notice to the Plummers stating the approximate schedule for such clearing except as provide [sic] in [the Easement Amendment.] Plummers shall temporarily move all stored or parked vehicles and other obstructions off the easement area over the 100 Line after receipt of such notice to permit routine mowing and clearing by Panhandle or its representatives.

[Filing No. 10-2 at 4-5.] The Settlement Agreement also provides for payment of attorney's fees associated with a breach: "7. Enforcement. The party found to be in breach of or in violation of any provision of this Agreement (but not [the Easement Amendment]) shall pay all costs and expenses including reasonable attorneys' fees of the prevailing party in any enforcement action or proceeding connected thereto." [Filing No. 10-2 at 6.]

The Easement Amendment, incorporated by reference into certain provisions of the Settlement Agreement, further elaborates upon the parties' rights to the land over the 100 and 400 Lines. Section 3 provides that Panhandle had not relinquished its "rights of ingress and egress . . . across the lands of Grantor . . . as may be necessary for the installation, operation, maintenance, repair and replacement" of Panhandle's pipelines. [Filing No. 10-2 at 10.]

Section 4, which uses the term "Easement Parcel 2" to describe the 100 Line right of way, further explains what constitutes an encroachment and what Panhandle may properly clear:

> Except with respect to the hedges ("Hedges") and the existing mature trees growing immediately adjacent to the 100 Line ("Trees") and the septic system, utility lines as presently located in existence within EASEMENT PARCEL 2 ("Encroachments"), and drainage swails as presently located in existence within any of the EASEMENT PARCELS, no . . . structure, facility or tree-like growth shall be hereafter permitted, placed, erected or planted anywhere on the EASEMENT PARCELS other than traditional agricultural growth and the Hedges and Trees . . . . It is understood that Grantee has and shall retain the right to remove, trim, defoliate or otherwise treat any trees or similar forms of vegetation upon the EASEMENT PARCELS to the degree that same may be reasonably necessary in the opinion of Grantee. Grantor grants Grantee the right, from time to time, to cut down, trim and remove from the EASEMENT PARCELS any and all trees, undergrowth and other obstructions (other than the Hedges or Trees). . . . Grantee shall have the right to clear its EASEMENT PARCEL 2 of any obstructions other than existing structures, including, but not limited to, any landscaping, the Hedges or Trees, without compensation to Grantor therefor and without replacement of such obstructions; provided, however, that in connection with any such Work, Grantee shall use its best efforts to preserve the Hedges and Trees; and Grantee thereafter shall continue to use its best efforts to preserve the Hedges and Trees so long as they do not interfere, in Grantee's reasonable determination, with Grantee's immediate access to the pipeline located in EASEMENT PARCEL 2 for emergency maintenance or repair of the offset pipeline in EASEMENT PARCEL 2. Furthermore, Grantor shall not construct, plant or place nor authorize others to construct, plant or place any building, structure, trees or other obstruction of any kind, either upon, above or below the surface of the EASEMENT PARCELS . . . .

[Filing No. 10-2 at 10-11.]

Section 5 addressed the use of the easements for parking cars:

> No portion of the EASEMENT PARCELS shall be utilized . . . for the parking of vehicles, and no impervious type pavement in connection with the establishment or

use of any vehicular parking area shall be placed over or within the EASEMENT PARCELS except that Grantor and Grantor's invitees may utilize those portions of EASEMENT PARCEL 2 as reasonably necessary for Grantor's use of the residence immediately adjacent thereto and for the use of Grantor and Grantors customers and invitees in connection with Grantor's business as it is being presently conducted; *provided, that* the number of vehicles in such permitted parking shall not be expanded beyond the current authorized use by Grantor, Grantor's invitees and customers and the driveway and parking area shall not be expanded any time unless otherwise agreed to in writing by the parties[.]

[Filing No. 10-2 at 11-12 (italics in original).]   As alluded to in section 5 of the Settlement Agreement, Mr. Plummer has had an engine repair business that he has operated on his property.

[Filing No. 92-3 at 8-9; Filing No. 67-2 at 2-3.]   Section 5 permits Mr. Plummer to continue to park vehicles in the 100 Line easement consistent with his personal and business usage at the time of the Easement Amendment.

### C. 2016 Dispute Over Right of Way Clearing

In 2016, Panhandle sent the Plummers a letter informing them of Panhandle's intent to clear its rights of way.[2]   [Filing No. 92-3 at 35-38.]   Panhandle learned that Mr. Plummer would be reticent to permit Panhandle's clearing[3] and decided to schedule a meeting with Mr. Plummer

---

[2] The Plummers state that Mr. Plummer "expressly denies having received any notice . . . in advance of the October 2016 clearing activities conducted by Panhandle."   [Filing No. 94 at 4.] But the deposition testimony to which the Plummers cite does not contain any "express denial" of receiving notice in advance of the October 2016 clearing, [*see* Filing No. 87-1 at 23], and the testimony to which Panhandle cites demonstrates that Mr. Plummer did in fact receive such notice, [Filing No. 92-3 at 36 ("Q  So when you received this letter, did you understand that Panhandle was providing you notice of its intent to clear its rights-of-way?  A  Yes.")].   Regardless, the Plummers do not raise the lack of notice as a prior material breach excusing performance of the Settlement Agreement, but instead argue only that they did not breach the contract because it was orally amended in May 2016.  [Filing No. 94 at 7.]

[3] The Plummers generally deny this, but offer no evidence to controvert any part of Panhandle's assertion other than testimony showing that Mr. Plummer did not make one particular statement about "own[ing]" a contractor's business.  [Filing No. 94 at 4 (citing Filing No. 87-1 at 16).]  Other than that particular statement, the remainder of Panhandle's assertion, which is supported by admissible evidence, is deemed admitted.  Fed. R. Civ. P. 56(e).

to discuss its plans.  [Filing No. 92-7 at 9; Filing No. 92-7 at 43; Filing No. 92-5 at 8-9; Filing No. 92-4 at 8.]

On May 20, 2016, three Panhandle representatives and Panhandle's clearing contractor met with Mr. Plummer.  [Filing No. 92-4 at 8; Filing No. 92-2 at 8; Filing No. 92-7 at 12.]  According to Mr. Plummer, he and the Panhandle representatives agreed that Panhandle would clear the 400 Line and the other active lines on the Property, but that Panhandle agreed not to perform any work on the inactive 100 Line until Panhandle prepared to lay a replacement line.  [Filing No. 67-3 at 18-22.]  According to Mr. Plummer, he and Troy Yackle, a Panhandle representative, shook hands after reaching the agreement.[4]  [Filing No. 67-3 at 19.]  Later, Mr. Plummer drove Panhandle's clearing contractor around the Property to show him how to access the easements and helped the contractor access a part of the 400 Line that was blocked by a cable "to keep the local kids from running their ATVs down there and getting injured."  [Filing No. 87-1 at 13; Filing No. 67-3 at 28-29.]

Several days after the meeting, Mr. Yackle contacted Mr. Plummer and informed Mr. Plummer that Panhandle intended to clear the 100 Line right of way.  [Filing No. 67-3 at 23.]  The contractor was able to clear most of the 400 Line and part of the 100 Line.  [Filing No. 92-4 at 17-21.]  As the Plummers admit, "vehicles, trees, and other objects," including shipping containers, obstructed the 100 Line right of way.  [Filing No. 94 at 5; Filing No. 92-4 at 36; Filing No. 92-2 at 29-30.]  Mr. Plummer refused to move these obstructions.  [Filing No. 94 at 5 (admitting this portion of Panhandle's factual assertion); Filing No. 92-7 at 18-19; Filing No. 92-5 at 31-33; Filing

---

[4] Panhandle has designated evidence controverting Mr. Plummer's assertion that an agreement was reached.  Because Panhandle prevails on the Plummers' summary judgment motion even when considering the facts in the light most favorable to the Plummers, the Court does not separately detail Panhandle's version of the May 20, 2016 meeting.

No. 92-2 at 31.] While Panhandle characterizes the cars on the 100 Line right of way as "abandoned," [*e.g.*, Filing No. 92-4 at 12], Mr. Plummer stated in his post-deposition declaration that the vehicles on the property are connected to his ongoing business, which has not substantially changed since the signing of the 1999 Settlement Agreement, [Filing No. 67-2 at 2-3].

### D. Procedural History in This Case

On August 26, 2016, Panhandle brought suit against the Plummers in this Court, alleging breach of the Settlement Agreement and Easement Amendment. [Filing No. 1.] Panhandle seeks damages and a permanent injunction, enjoining the Plummers from interfering with Panhandle's rights to the easement and requiring the Plummers to permit Panhandle to access its easement areas. [Filing No. 1 at 9-10.] Attached to Panhandle's Complaint are the Deeds of Easements and subsequent assignments, [Filing No. 1-1], and the 1999 Settlement Agreement, [Filing No. 1-2].

On November 1, 2016, the Plummers filed their Counterclaim Complaint against Panhandle, alleging that Panhandle abandoned the 100 Line right of way and breached the May 2016 oral contract. [Filing No. 16.]

On November 27, 2017, the Plummers moved for summary judgment in their favor on their counterclaims and on Panhandle's claims. [Filing No. 65.] On January 8, 2018, Panhandle cross-moved for summary judgment. [Filing No. 71.] Those motions, in addition to Panhandle's Motion for Sanctions, [Filing No. 74], are ripe for decision.

**IV.**

**DISCUSSION**

The Court first discusses the Plummers' abandonment claim before turning to the parties'

breach of contract claims.[5]  Because summary judgment on the remaining breach of contract claims

depends upon the alleged 2016 oral amendment of the 1999 Agreements, the Court addresses these

remaining claims together.

**A.  Abandonment**

Panhandle argues that it is entitled to summary judgment on the Plummers' abandonment

claim on several grounds, including that the Plummers released the claim in the 1999 Settlement

Agreement.  [Filing No. 96 at 21-22.]  In response, "Defendants concede that any abandonment

claim was released as part of the 1999 Settlement Agreement and agree that summary judgment is

appropriate with respect to the abandonment claim."  [Filing No. 94 at 6.]

The Court agrees with the parties' assessment of the Plummers' abandonment claim.  In

1996, the Plummers sued for a declaration that Panhandle had abandoned the 100 Line, [Filing

No. 92-6 at 9], and in 1999, the Plummers "release[d] any and all claims that have been . . . asserted

in connection with the Lawsuit," [Filing No. 10-2 at 5-6]  Per the Plummers' concession, the Court

---

[5] The Court declines to address the Plummers' request, discussed only in its initial brief, for a declaration that "each of the vehicles" and "the respective evergreen and walnut trees" remaining in the 100 Line easement area are permissible under the Settlement Agreement.  [Filing No. 93 at 11.]  The Plummers' Counterclaim Complaint makes no mention of this claim, which instead seeks a declaration only as to the abandoned status of the 100 Line and other rights under the alleged May 2006 oral agreement.  [*See* Filing No. 32 at 17-19.]  The Plummers' new claim fails under the "axiomatic rule" that parties may not amend their pleadings in a summary judgment brief.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

**GRANTS** Panhandle's Motion for Summary Judgment as to the Plummers' abandonment counterclaim.[6]

### B. Breach of Contract

Both parties move for summary judgment as to the remaining breach of contract claims. The Court first addresses whether the alleged May 2016 oral contract is enforceable before turning to the issues of breach and remedy.

#### 1. Enforceability of May 2016 Oral Contract

The Plummers argue that Panhandle breached the oral contract reached in May 2016. [Filing No. 93 at 9-10.] Panhandle responds that the alleged May 2016 oral contract is unenforceable under the statute of frauds as an oral contract that purports to amend the parties' land rights.[7] [Filing No. 96 at 33-35.]

Panhandle argues that the Plummers breached both of the 1999 Agreements. [Filing No. 96 at 29-32.] The Plummers respond that they did not breach the 1999 Agreements because they were amended in the May 2016 oral contract. [Filing No. 94 at 7.] The Plummers argue that the oral contract is enforceable because it does not amend the parties' land rights, but instead amends the terms of contracts which are not subject to the statute of frauds. [Filing No. 94 at 7-9.] In the

---

[6] Following this concession, counsel for the Plummers asserts: "The undersigned counsel was unaware of the release of the abandonment claim until the filing of Plaintiff's Motion for Summary Judgment." [Filing No. 94 at 6.] But the Settlement Agreement from the 1996 lawsuit was attached to the very first filing in this matter—Panhandle's Complaint—filed on August 26, 2016. [Filing No. 1-2.] This strongly suggests that the Plummers' counsel failed to engage in the reasonable factual inquiry required by Rule 11(b)(3). A separate Rule 11 show cause order shall issue.

[7] Because the Court agrees that the purported oral contract is unenforceable under the statute of frauds, the Court need not address Panhandle's additional arguments that the oral contract is unenforceable.

alternative, the Plummers suggest that the oral contract should be enforced pursuant to promissory estoppel. [Filing No. 94 at 9.]

The Plummers' response amounts to a concession that they breached the 1999 Agreements unless the alleged May 2016 oral contract is enforceable under Indiana's statute of frauds. If it is unenforceable, then the Plummers breached the Settlement Agreement and the Easement Amendment and Panhandle did not breach any agreement with the Plummers. If, however, the oral contract is enforceable, then genuine issues of material fact as to the existence of the purported agreement preclude summary judgment for either party.

The parties to this diversity case both apply Indiana law, and the Court will do likewise. *See Equitable Life Assurance Soc'y of the U.S. v. Bell,* 27 F.3d 1274, 1277 (7th Cir. 1994). Indiana's statute of frauds provides, in relevant part, as follows:

> (b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:
> . . .
>> (4) An action involving any contract for the sale of land.

Ind. Code § 32-21-1-1(b). While other states have taken different approaches, every Indiana court to consider the issue has held that "when 'a contract affected by the statute of frauds has been put in writing, and afterwards orally modified, such modified agreement is also within the statute.'" *Zusy v. Int'l Med. Grp., Inc.*, 500 F. Supp. 2d 1087, 1096 (S.D. Ind. 2007) (Hamilton, J.) (quoting *Ward v. Potts*, 91 N.E.2d 643, 645 (Ind. 1950)) (collecting cases).

"An easement is an interest in land within the meaning of the Statute of Frauds, and a contract creating such an interest must be in writing." *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 620 (Ind. Ct. App. 2015). Thus, if the May 2016 oral agreement "orally modified" the

14

easements, it is unenforceable for failure to comply with the statute of frauds. Among other things, the Settlement Agreement expressly obligated the Plummers not to "place any structures . . . within the defined easements" and to "temporarily move all stored or parked vehicles and other obstructions off the easement area over the 100 Line" after receiving notice of Panhandle's intent to perform clearing. [Filing No. 10-2 at 4-5.] The Easement Amendment expressly conferred upon Panhandle "the right, from time to time, to cut down, trim and remove from the EASEMENT PARCELS any and all trees, undergrowth and other obstructions." [Filing No. 10-2 at 11.] The oral agreement purports to amend these and other provisions of the 1999 Agreements to limit Panhandle's right to clear the 100 Line right of way to the time at which it decides to lay a replacement pipeline. The amendment therefore needed to independently comply with the writing requirement of the statute of frauds. *Cf., e.g.*, *Huber v. Hamilton*, 33 N.E.3d 1116, 1123 (Ind. Ct. Ap. 2015) ("[B]ecause the land contract was required to be in writing, any modification to it also had to be in writing."); *Zusy*, 500 F. Supp. 2d at 1096-97 (holding unenforceable oral agreement to extend two-year contract of employment).

Faced with Indiana's clear position on oral amendments of contracts covered by the statute of frauds, the Plummers raise three arguments as to why the statute nonetheless does not apply. First, the Plummers argue that that the oral contract amended the Settlement Agreement, which "itself would not have been required to be in writing." [Filing No. 94 at 8.] The Plummers have waived this argument by failing to support it with any argument or authority. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). Moreover, the argument lacks merit. The Indiana Court of Appeals recently rejected a similar argument in *Ellison*, where the appellant argued that "an agreement to settle an eminent domain action is not subject to the Statute of Frauds because it is not a contract for the sale of land, but is merely an agreement to settle

ongoing litigation that requires the transfer of land." 47 N.E.3d at 620 n.5. The court was "not persuaded to create an exception to Indiana's general rule" that "*any* contract which seeks to convey an interest in land is required to be in writing." Id. (emphasis in original). This Court is likewise unpersuaded. An easement is "an interest in the land" of another, *Borovilos Rest. Corp. II v. Lutheran Univ. Ass'n, Inc.*, 920 N.E.2d 759, 764 (Ind. Ct. App. 2010), and, as explained above, the contract creating the interest must be in writing to be enforceable under the statute of frauds. Any contract amending that interest must likewise be in writing. The Settlement Agreement amended the prior easement agreements by changing the parties' interests in the easement land. Therefore, contrary to the Plummers unsupported assertion, both the Settlement Agreement and the May 2016 agreement were required to be in writing to comply with the statute of frauds.

Second, the Plummers argue that "the May 20 Agreement is too remotely connected to the underlying easement rights to be said to involve a sale of land." [Filing No. 94 at 8.] But the late-19th century case relied upon by the Plummers for their "remote connection" theory provides no support for their position. *Banes v. Chastain*, 68 Ind. 376, 380-81 (1879), held that an oral agreement to maintain a partition fence under a partition fence statute was enforceable because, while the contract "related to real estate," it was "not a contract for the sale of lands." Id. A 1915 case cited *Banes* for the general rule of the time that "[o]ral agreements for the division of partition fences are valid and enforceable," again (like *Banes*) addressing the partition fence statute then in effect. *State ex rel. Fielo v. Burkit*, 108 N.E. 113, 114 (Ind. 1915). *Banes* says nothing about interests in land or the Plummers' "remote connection" theory and is therefore inapposite

Finally, the Plummers argue that even if the statute of frauds applies, the agreement should be enforced pursuant to the doctrine of promissory estoppel. [Filing No. 94 at 9.] Again the

Plummers fail to develop a cogent argument as to how this doctrine applies. A party invoking promisory estoppel must establish five elements: "(1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise." *Huber*, 33 N.E.3d at 1124. As to the final element, "the party [invoking estoppel] must show that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights that the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss." *Id.* (citing *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001)). The Plummers' perfunctory argument makes no attempt to demonstrate that they would suffer "the infliction of an unjust and unconscionable injury and loss" should the statute of frauds preclude enforcement of the May 2016 oral agreement, and the Court cannot discern any such loss. Promissory estoppel does not apply to this case. As a consequence, the statute of frauds applies to render the alleged May 2016 oral contract unenforceable.

The unenforceability of the alleged May 2016 oral contract carries with it several consequences. First, Panhandle is entitled to summary judgment on the Plummers' claim for breach of contract.[8] Second, because the Plummers' claim for declaratory judgment is wholly derivative of the Plummers' unsuccessful breach of contract and abandonment claims, Panhandle is entitled to summary judgment on their claim for declaratory judgment as well. The Court

---

[8] Even if the Plummers were to survive summary judgment and prevail at trial on their breach of contract counterclaim, they would be precluded from presenting any evidence of damages apart from enforcement costs under section 7 of the Settlement Agreement due to Mr. Plummer's recalcitrance at his deposition, [Filing No. 92-3 at 138 ("Q So what do you intend to tell the jury as to how you should be compensated for Panhandle's conduct? A I Guess we have to wait till we get to trial.")], the Plummers' failure to provide any evidence concerning actual damages upon a specific request by Panhandle, and the fact that the Plummers' lone damages expert was stricken by the court, [Filing No. 64].

therefore **GRANTS** summary judgment in Panhandle's favor on the Plummers' breach of contract and declaratory judgment counterclaims. Finally, the unenforceable May 2016 oral agreement may not serve as a defense to the Plummers' admitted breaches of the 1996 Agreements.

### 2. Specific Breaches & Damages

The Plummers have not raised any applicable basis for excusing noncompliance with the writing requirement of the statute of frauds. Furthermore, the Plummers' response brief concedes that, but for the viability of the May 2016 oral contract, the Plummers have breached the settlement agreement. [Filing No. 94 at 7 ("Panhandle argues that the Plummers committed several breaches . . . . However, the Settlement Agreement was modified at the May 20 Meeting such that Panhandle agreed that it would not clear the eastern portion of the 100 Line . . . .").] Panhandle is entitled to summary judgment as to liability for breach of contract. All that remains for determination is the breaches for which Panhandle has demonstrated an entitlement to summary judgment and the appropriate relief for those breaches.

Pandhandle sets forth the following alleged breaches of the Settlement Agreement and Easement Amendments:

- Refusing to move vehicles, storage containers, and other obstructions from the 100 Line right of way;

- Claiming that Panhandle lacked the right to clear the 100 Line right of way due to its decommissioned status;

- Orally refusing to allow Panhandle to clear the entire 100 Line right of way, save for certain trees and hedges; and

- Keeping abandoned vehicles which were not reasonably necessary to Mr. Plummer's business parked on the 100 Line right of way.

[Filing No. 96 at 31.]

While admitting that they have breached the agreement (given that the alleged oral amendment is unenforceable), the Plummers have provided sufficient evidence to create a genuine issue of material fact as to two of these alleged breaches. First, as to point three, the Plummers cite to deposition testimony that, if believed, shows that Mr. Plummer did not orally refuse Panhandle access to the 100 Line, but objected only to letting Panhandle cut a part of the Plummers' woods to allow the workers to reach the right of way. [Filing No. 87-1 at 14; Filing No. 92-3 at 81-82.] Second, as to point four, the Plummers cite to Mr. Plummer's declaration, stating that he continues to conduct his engine repair business on his property and that there are the same number or fewer vehicles on the 100 Line right of way compared to the time the 1999 Agreements were signed. [Filing No. 67-2 at 2-3.] These factual disputes may not be resolved on summary judgment.

However, Panhandle is entitled to summary judgment on their claims that the Plummers breached the 1999 Agreements by refusing the move the vehicles and other obstructions after they were provided notice of the clearings; by keeping storage containers and other obstructions on the 100 Line right of way; and by maintaining that Panhandle lacked the right to clear the 100 Line right of way due to its decommissioned status. In their briefing, the Plummers admit to each of these breaches. [*E.g.*, Filing No. 93 at 5 (admitting in paragraph 29 that the Plummers refused to move the obstructions from the 100 Line); Filing No. 93 at 5 (admitting in paragraph 32 by failing to controvert evidence that storage containers obstructed the 100 Line right of way); Filing No. 93 at 5 (admitting in paragraphs 38 and 39 that Mr. Plummer believed that Panhandle had abandoned 100 Line beginning in 1994); *see also, e.g.*, Filing No. 16 at 22 (raising released abandonment claim as defense to alleged breaches of contract).] These admissions are conclusive evidence of

the Plummers' breaches of the 1996 Agreements.  *See* Fed. R. Civ. P. 56(e)(2)-(3) (court may consider facts undisputed and grant summary judgment where party fails to controvert opposing party's factual assertions).  Panhandle is therefore entitled to summary judgment as to liability for those breaches.

Regardless of the number of breaches, Panhandle has set forth uncontroverted evidence showing that it has suffered $6,000 in damages for mobilization and demobilization fees to complete the clearing work on the Property.[9]  [Filing No. 92-5 at 47; Filing No. 92-7 at 48.]  The Plummers stated that they "are without knowledge regarding any actual costs," [Filing No. 94 at 5], but as the Court explained above, the failure to controvert Panhandle's evidence amounts to an admission.  The Plummers have likewise provided no evidence or argument to controvert the assertion that these damages were caused by the Plummers' breach.  Panhandle is therefore entitled to recover its damages in the amount of $6,000.

Panhandle next sets forth an affidavit stating that it has incurred $3,614.39 in costs and $101,326.10 in attorney's fees as of January 7, 2018.  Costs and reasonable attorney's fees are recoverable pursuant to section 7 of the Settlement Agreement.  [Filing No. 92-8 at 2-3.]  Yet again the Plummers only respond with an unsupported denial that they are "liable to Panhandle for any amounts," citing back to their own pleadings.  [Filing No. 94 at 5 (citing Filing No. 87-6 at 12-17).]  One may not rest upon denials in pleadings to defeat summary judgment.  *See* Fed. R. Civ. P. 56(e); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014).  Therefore,

---

[9] As explained below, the Court concludes that Panhandle is entitled to all of the relief it seeks, including damages, attorney's fees, and injunctive relief.  The Court cannot discern any reason to hold a trial to resolve the remaining issues of fact on the additional alleged breaches of contract, as resolution of these issues in Panhandle's favor could not result in any additional relief.  The Court will therefore order Panhandle to notify the Court should Panhandle believe that it remains entitled to a trial on these remaining issues of fact.

in addition to the $6,000 in damages, Panhandle is entitled to its costs and reasonable attorney's fees. To allow the Court to assess the reasonableness of the fee request in light of the entire litigation, the Court will order Panhandle to submit a complete fee petition, with supporting documentation, after all remaining issues are resolved.

### 3. Permanent Injunction

Finally, Panhandle argues that it is entitled to a permanent injunction to enjoin the Plummers from "(a) their continued failure and/or refusal to comply with the express terms of the Settlement Agreement and Amendment of Agreements, and (b) interfering with Panhandle's exercise of its rights to clear and maintain its 100 Line and 400 Line rights-of-way free and clear of impermissible obstructions and encroachments." [Filing No. 96 at 39.] Panhandle argues that it has established all of the requirements for a permanent injunction and that the balance of the equities weigh in its favor. [Filing No. 96 at 39-41.]

In response, the Plummers argue that the equities do not favor a permanent injunction. [Filing No. 94 at 11-12.] In particular, the Plummers argue that Panhandle has not demonstrated an irreparable injury and that the balance of hardships favors the Plummers.

In reply, Panhandle argues that the Plummers' continued interference with Panhandle's property rights constitutes irreparable harm and that the balance of hardships favors Panhandle, particularly because it is seeking only to require the Plummers to comply with the terms of the 1999 Settlement Agreement and Easement Amendment. [Filing No. 97 at 14-15.]

"Awards of permanent injunctive relief in diversity cases are governed by the forum state's choice-of-law rules." *Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1012 (7th Cir. 2001). Similar to the standards applied in federal question cases, *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), Indiana law requires a party seeking a permanent injunction to demonstrate (1)

inadequate remedies at law; (2) success on the merits; (3) a balance of hardships weighing in the movant's favor, and (4) that the proposed injunction would not disserve the public interest. *Ferrell v. Dunescape Beach Club Condos. Phase I, Inc.*, 751 N.E.2d 702, 712-13 (Ind. Ct. App. 2001). "Finally, permanent injunctions are limited to prohibiting injurious interference with rights." *Id.* at 713 (citing *Ind. Family & Soc. Servc. Admin. v. Hospitality House of Bedford*, 704 N.E.2d 1050, 1061 (Ind. Ct. App. 1998)).

First, the Plummers argue that Panhandle cannot show irreparable injury because the 100 Line "contains only air." [Filing No. 94 at 11.] Panhandle argues that persistent interference with property rights suffices to establish irreparable harm, regardless of whether the 100 Line is active. [Filing No. 97 at 13.] Panhandle also notes that the Plummers' argument ignores the fact that the 400 Line is active. [Filing No. 97 at 13.]

"A plaintiff's remedies at law are inadequate for purposes of issuing an injunction where irreparable harm would be caused" if the plaintiff is left with damages alone. *Ferrell*, 751 N.E.2d at 713. Persistent refusal to honor another's property rights properly gives rise to irreparable harm, in part because "the damages for each day's obstruction are insignificant [and] the remedy of successive actions at law" is, by its nature, inadequate to remedy the lost usage of the property. *Lynch v. Keck*, 263 N.E.2d 176, 181 (Ind. Ct. App 1970); *see Ferrell*, 751 N.E.2d at 713-14 (affirming permanent injunction where defendant "continued to refuse access to her balcony despite a trial court's judgment declaring that [the plaintiff] had a right of access to make [a] repair"); *cf. Ballard v. Harman*, 737 N.E.2d 411, 417 (Ind. Ct. App. 2000) ("A trial court may issue an injunction to prevent a continued trespass.").

In this case, Panhandle has demonstrated the insufficiency of a remedy at law. Panhandle has regulatory obligations to which it must attend, and the inability to access its rights of way

impedes its ability to comply with those obligations. Damages do not sufficiently account for that type of injury. Nor does it matter that the 100 Line is currently inactive. The undisputed evidence shows that the Plummers continue to disregard Panhandle's rights to access and clear that particular right of way by, for example, leaving storage containers on the easement land. Moreover, in this lawsuit the Plummers yet again have sought a declaration that the 100 Line has been abandoned, despite having previously litigated, settled, and released this precise claim. The theoretical ability to return time and time again to relitigate these issues and seek damages does not mean that Panhandle has a sufficient remedy at law. Rather, it indicates the opposite. Cumulatively, the evidence before the Court conclusively establishes that an action at law cannot provide Panhandle with adequate relief.

Second, as demonstrated above, Panhandle has achieved success on the merits of its lawsuit.

Third, as to the balance of hardships, the Plummers argue that

[a]s a result of Panhandle's breach of the agreement reached at the May 20 Meeting, Panhandle seeks to require that the Plummers move a large number of vehicles and other objects from the 100 Line, some of which may be difficult to move. . . . Clearly, Panhandle seeks to impose a significant hardship on the Plummers in return for a minimal gain.

[Filing No. 94 at 11-12.] The largest problem with this argument is that the proposed injunction seeks only to require the Plummers to perform their obligations under the 1999 Agreements, which are unaffected by the unenforceable May 20 oral agreement. The Plummers will not suffer any hardship to which they did not contractually agree. Panhandle, meanwhile, is entitled to access its pipeline rights of way and is unable to do so for as long as the obstructions continue. Moreover, Panhandle has regulatory obligations which require it to access its rights of way. The balance of harms weighs in Panhandle's favor.

Finally, as Panhandle argues and the Plummers do not dispute, the public interest is not disserved by permitting Panhandle to access and clear its rights of way as permitted by the 1999 Agreements.

Panhandle has demonstrated its entitlement to a permanent injunction. However, Panhandle's request for "an order enjoining Defendants from (a) their continued failure and/or refusal to comply with the express terms of the Settlement Agreement and Amendment of Agreements, and (b) interfering with Panhandle's exercise of its rights to clear and maintain its 100 Line and 400 Line rights-of-way free and clear of impermissible obstructions and encroachments" does not comply with Rule 65(d)(1)(C), which requires that the injunction "describe in reasonable detail—and not by referring to the complaint or other document—the act or act restrained or required." The Court will therefore order Panhandle to submit a proposed permanent injunction which complies with Rule 65(d)(1) and will give the Plummers an opportunity to respond to the contents—but not the overall propriety—thereof.

## V.
### CONCLUSION

For the foregoing reasons, the Court concludes that Panhandle is entitled to summary judgment on all of the Plummers' counterclaims. Panhandle is also entitled to summary judgment on its claims that the Plummers breached the 1999 Agreements, as described above, and has demonstrated its entitlement to $6,000 in damages, costs, and reasonable attorney's fees. However, Panhandle is not entitled to summary judgment on the specific alleged breaches of improperly parking cars on the 100 Line right of way and orally denying access to the 100 Line right of way. Additionally, the Court concludes that Panhandle is entitled to a permanent injunction prohibiting the Plummers from interfering with Panhandle's right to access and clear its

rights of way.  Therefore, the Court **DENIES** the Plummers' Motion for Summary Judgment, [65],

**GRANTS IN PART** Panhandle's Motion for Summary Judgment, [71], and **ORDERS** as follows:

- On or before **April 20, 2018**, Panhandle shall notify the Court whether it seeks a trial on the remaining alleged breaches of contract.  If Panhandle requests a trial despite already receiving all requested relief, it shall explain the basis for its request and the Plummers shall have an opportunity to respond within **14 days** thereafter.

- If Panhandle does not request a trial, it shall file, on or before **April 20, 2018**, a proposed permanent injunction which complies with Rule 65(d)(1)(C) and a complete petition for attorney's fees and costs, including supporting documentation.  Briefing on the proposed injunction and fee petition shall proceed pursuant to Local Rule 7-1(c)(2).

The Court will enter final judgment and a permanent injunction after these issues are addressed.

Finally, the Court **DENIES AS MOOT** Panhandle's Motion for Sanctions, [74], which seeks attorney's fees from Mr. Plummer to compensate for his alleged conduct in discovery.  As explained above, Panhandle is entitled to attorney's fees under the Settlement Agreement, and any sanction would be duplicative of the fee award.

Date: 3/27/2018

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**