UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PANHANDLE EASTERN PIPE LINE, COMPANY, L.P., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:16-cv-02288-JMS-DLP ) |
| JOSEPH F. PLUMMER, DEBORAH L. PLUMMER, | ) ) ) |
| Defendants. | ) ) |

## ENTRY

This matter, concerning Plaintiff Panhandle Eastern Pipe Line Company, L.P.'s ("Panhandle") rights of way on Defendants Joseph and Deborah Plummer's land, is before the Court for the third—and final—time to address the scope and contents of the permanent injunction to which Panhandle is entitled. [Filing No. 124.] For the reasons detailed herein, Panhandle's uncontroverted evidence demonstrates that it is entitled to a permanent injunction in accordance with the terms it has proffered. [Filing No. 132-1.] The Court **OVERRULES** any and all objections raised by the Plummers, and will enter judgment in accordance with this Order and the Court's Order, entered contemporaneously, on Panhandle's fee petition.

### I.
#### PROCEDURAL BACKGROUND

The facts underpinning this dispute have been discussed at length in the Court's Order on the parties' cross-motions for summary judgment, wherein the Court denied summary judgment to the Plummers and granted partial summary judgment to Panhandle. [Filing No. 100.] In brief, Panhandle brought suit alleging that the Plummers violated two agreements concerning Panhandle's rights of way for two pipelines which traverse the Plummers' property. On summary

judgment, the Court held that the undisputed evidence demonstrated that the Plummers had in fact breached the agreements by refusing to move vehicles and other obstructions from the 100 Line right of way, among other things. [Filing No. 100 at 19.] While several other alleged breaches could not be resolved on summary judgment, the Court observed that "Panhandle has set forth uncontroverted evidence showing that it has suffered $6,000 in damages." [Filing No. 100 at 20.] This ruling completely resolved Panhandle's claim for damages, as the damages reflected the costs Panhandle would incur to complete clearing work on the Plummers' property, regardless of the number of ways in which the Plummers breached the contracts. [Filing No. 100 at 20.]

The Court also concluded that Panhandle was entitled to a permanent injunction and directed Panhandle to file a proposed injunction in compliance with Rule 65(d)(1). [Filing No. 100 at 22-24.] On April 20, 2018, Panhandle filed its Proposed Permanent Injunction. [Filing No. 108.] Panhandle's filing, however, failed to comply with Rule 65(d)(1) because it was "difficult if not impossible for Panhandle to specifically describe what needs to be done or restrained in the abstract, without physically observing the current condition of the rights-of-way." [Filing No. 117 at 3.] The Court therefore ordered the parties to conduct an inspection, attempt to agree on as many terms of the permanent injunction as possible, and "submit any appropriate evidence . . . to support their positions on any remaining areas of disagreement." [Filing No. 117 at 3.]

Aside from Panhandle's request for attorney's fees and costs, which is addressed by separate order, all that remains for the Court's consideration is the appropriate scope of the permanent injunction. The parties completed the inspection as ordered and, on August 20, 2018, Panhandle filed its Amended Proposed Permanent Injunction. [Filing No. 121.] The Plummers have filed their objections, and Panhandle replied. The matter is therefore fully briefed and ripe for decision.

**II.**
**DISCUSSION**

Panhandle's submitted injunction is accompanied by an outline of the terms to which the parties have agreed, numerous photographs depicting parts of the rights of way, and argument as to why the Court should include its proposed terms where issues may be contested. [Filing No. 124.]

In response, the Plummers contend that the "court's injunction should be confined to being a remedy for the breach of contract that the Court found in its summary judgment ruling . . . ." [Filing No. 128 at 1.] The Plummers also direct arguments to specific proposed terms, which the Court will address as appropriate below. [Filing No. 128 at 2-8.]

In reply, Panhandle proposes several changes to accommodate two of the Plummers' objections. [Filing No. 132 at 2; Filing No. 132 at 6.] Panhandle also asserts that the Plummers' remaining arguments lack evidentiary support or misinterpret the relevant contractual language. [Filing No. 132 at 3-5.]

**A. Scope of Review**

The Plummers' argument that the permanent injunction should be limited to the breaches of contract established by the undisputed evidence proffered on summary judgment ignores the different role that the Court plays in determining appropriate equitable relief. Where, as here, the plaintiff seeks both equitable and legal remedies, the Court must sequence the proceedings, insofar as possible, to protect the parties' jury trial rights. *Lacy v. Cook Cnty.*, 897 F.3d 847, 858 (7th Cir. 2018). This usually means that the Court must "submit the legal claims to a jury before the court decides the equitable claims." *Id.* Here, Panhandle's legal claim to damages was finally resolved on summary judgment, based upon the undisputed evidence. Now that only Panhandle's equitable claims to injunctive relief remain, the Court itself may act as trier of fact without regard to the

3

restrictions of summary judgment procedure or its earlier summary judgment order. As the Seventh Circuit has observed, an "injunction must . . . be broad enough to be effective, and the appropriate scope of the injunction is left to the district court's sound discretion." *Russian Media Group, LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010).

Courts generally hold evidentiary hearings when there is a "factual dispute as to the ground on which the injunction was ordered." *Socialist Workers Party v. Ill. State Bd. of Elections*, 566 F.2d 586, 857 (7th Cir. 1977), *aff'd*, 440 U.S. 173 (1979). To assess the need for a hearing, courts may request that the parties file "offer[s] of proof outlining facts they would present if a hearing were granted." *Id.* Here, the Court went one step further and ordered the parties to "submit any appropriate evidence . . . to support their positions on any remaining areas of disagreement." [Filing No. 117 at 3.] The Plummers' submissions do not set forth any evidence which contradicts the evidence set forth by Panhandle.[1] Rather, the Plummers argue that the Court should construe the contracts a certain way and draw certain inferences from Panhandle's evidence. Under these circumstances—and particularly because no party, at any time, has requested a hearing on the issues raised by Panhandle's request for a permanent injunction—the Court concludes that "[n]o purpose would [be] served by holding an evidentiary hearing in this case." *Id.* The Court therefore proceeds to evaluate the merits of the parties' disputes based upon the record presently before it.

### B. Objections Rendered Moot

The parties paid heed to the Court's suggestion that they "endeavor to reach an agreement on as much of the injunction content as possible," [Filing No. 117 at 3], such that there remain

---

[1] At one point the Plummers suggest that they "can testify" to certain facts, [Filing No. 128 at 4], but given the Court's Order requiring the Plummers to submit "evidence," their purported testimony should have been reduced to a declaration or affidavit. In any event, their proposed testimony regarding the age of certain trees is ultimately immaterial in light of the record evidence before the Court, as discussed below.

only a few areas of disagreement. Two of these have subsequently been resolved by Panhandle's concessions in its reply brief. The first concerns paragraph 6(a) of Panhandle's filing. [*See* Filing No. 124 at 5.] The Plummers request that they be allowed to rely on markings made by "either Panhandle or the Call811 people" for determining the centerline of the 100 Line right of way. [Filing No. 128 at 3.] In its reply, Panhandle proposes amended language to accommodate the Plummers' concern, as follows:

> For purposes of establishing the ___ Line Centerline under this injunction, the parties may rely upon the centerline of the ___ Line as it is located and marked either (a) by Panhandle at the time of any clearing work; or (b) in response to an Indiana811 call made by the Plummers.

[Filing No. 132 at 2.] The Court therefore **OVERRULES AS MOOT** the Plummers' objection to paragraph 6(a), as amended by the proposed language shown above and included in the complete revised proposed injunction in paragraphs 2(a), [Filing No. 132-1 at 1], and 3(a), [Filing No. 132-1 at 3], of Panhandle's final proposed injunction attached to its reply brief.

Second, the Plummers argue that certain flowering crabapple trees should be excluded from clearing under the terms of the agreements. [Filing No. 128 at 3-4.] In reply, Panhandle states:

> Without conceding that the Flowering Crabapple Tree is a "mature" tree as that term is used in the Amendment of Easement Agreements and fully-reserving its rights in that regard in the future, Panhandle has no objection to excluding the Flowering Crabapple Tree from the scope of the proposed injunction for the sole purpose of the injunction being entered in this lawsuit.

[Filing No. 132 at 4.] Panhandle's final proposed injunction, moreover, provides that "Panhandle shall not clear or side trim . . . the 'Flowering Crabapple Tree' as indicated on the Exhibit 4 Diagram [available at Filing No. 132-3]." [Filing No. 132-1 at 3-4.] Panhandle's amended language accommodates the Plummers' request, and the Court therefore **OVERRULES AS MOOT** this objection.

### C. Contested Issues

The remaining issues concern disputes about the construction of the agreements upon which the requested injunction is premised. The Court addresses each of the Plummers' objections in turn.

#### 1. Colorado Spruce & Walnut Trees

The Plummers' first objection is that two Colorado spruce trees and "[a]t least one or two mature walnut trees" should be exempt from clearing and trimming as "mature trees growing immediately adjacent to the 100 Line," as provided by the Amendment of Easement Agreements ("Amendment"). [Filing No. 128 at 3-4.] The Plummers argue that several of these trees are "within the 100 Line Easement" and are therefore "immediately adjacent to the 100 Line," as required under the Amendment. [Filing No. 128 at 4.] Finally, the Plummers suggest that "the walnut trees have survived prior clearings by Panhandle since 1999 so they must have interpreted the agreement the same way since 1999." [Filing No. 128 at 4-5.]

In reply, Panhandle argues that the Plummers incorrectly believe that "immediately adjacent" means "within," when the terms as used in the Amendment necessarily have different meanings. [Filing No. 132 at 3-5.] Panhandle further argues that the trees were not mature at the time the Amendment was signed. [Filing No. 132 at 3.] Finally, Panhandle argues that the Plummers fail to provide any evidence to support their assertion that the parties have intentionally left the walnut trees on the 100 Line right of way since 1999.

The Plummers' proposed interpretation of the Amendment would render the term "immediately adjacent" superfluous. The Amendment, moreover, specifically distinguishes "the existing mature trees growing immediately adjacent to the 100 Line" from "the septic system [and] utility lines as presently located in existence within" the right of way. [Filing No. 10-2 at 10.]

This demonstrates that the parties understood there to be a material distinction between items located "immediately adjacent" to the 100 Line, and items located "within" the right of way. Otherwise, as Panhandle explains, the Amendment would have simply excluded all mature trees "presently located in existence within" the right of way. Additionally, the Plummers fail to support their assertion that the parties intentionally left the walnut trees alone during "prior clearings by Panhandle since 1999." [Filing No. 128 at 4-5.] The Plummers have not set forth any evidence that Panhandle has undertaken any tree clearings since 1999—aside from the aborted efforts from 2017. The fact that the trees may have remained since then does not support the Plummers' argument. The Plummers' interpretation cannot be squared with the contractual language, and the Plummers are not entitled to have the "two Colorado spruce trees" and the walnut tree exempt from clearing.[2]

To the extent the Plummers argue that certain walnut trees, located outside of the 100 Line right of way, should not be subject to side trimming, [*see* Filing No. 128 at 4 n.3], they again fail to support this argument with citation to or discussion of either of the operative agreements. The Amendment again forecloses the Plummers' argument, as it explains as follows: "It is understood that Grantee has and shall retain the right to remove, trim, defoliate or otherwise treat any trees or similar forms of vegetation upon the EASEMENT PARCELS to the degree that same may be reasonably necessary in the opinion of Grantee." [Filing No. 10-2 at 11.] Inasmuch as the Plummers have failed to argue, let alone demonstrate, that any of the walnut trees are "immediately adjacent to the 100 Line," they remain subject to the general side-trimming provision of the Amendment. Such term is also properly included in the injunction, given the considerations

---

[2] Because the Court agrees with Panhandle regarding its interpretation of the Amendment's language, it need not address Panhandle's additional argument concerning the maturity of the trees as of 1999.

7

discussed in the Court's earlier Order on summary judgment. [Filing No. 100 at 21-24.] The Court therefore **OVERRULES** the Plummers' objection to the inclusion of the Colorado spruce and walnut trees in the clearing and trimming provisions of the permanent injunction.

### 2. "Permanently" Move Items

Finally, the Plummers object to the requirement that they "permanently" remove certain items from the 100 Line right of way. [Filing No. 128 at 5 (referencing Filing No. 124 at 6-7, paragraphs 6(c) and (d)).] The Plummers maintain that the "requirement of 'permanent' movement goes beyond the 1999 agreement" and "contradicts" the injunction provision permitting the Plummers to "utilize the easement and parking area for their business repairing cars." [Filing No. 128 at 5.] The Plummers wish to "protect their contractual right to conduct their business." [Filing No. 128 at 5.]

Panhandle replies that it "has no objection to removing the word 'permanently' from its present location" as long as the following sentence is added: "The spare air conditioner unit, the large storage unit, and the scrap pile of wood and metal shall be permanently removed from the 100 Line Right-of-Way." [Filing No. 132 at 6.] Panhandle asserts that "[n]one of these items are vehicles exempted from permanent removal" by the Amendment and that "[t]he spare air conditioner unit bears no relation to Mr. Plummer's alleged business activities . . . ." [Filing No. 132 at 6.] Panhandle's amended proposal would therefore exclude the vehicles and trailer listed on pages 6 and 7 of filing number 124 from permanent removal.

Two provisions from the Amendment are relevant to the Plummers' objection. The first is one sentence from section 4 of the Amendment: ". . . Grantor [the Plummers] shall not construct, plant or place nor authorize others to construct, plant or place any building, structure, trees or other obstruction of any kind, either upon, above or below the surface of the EASEMENT PARCELS

8

. . . ." [Filing No. 10-2 at 11.] The second comes from section 5 of the Amendment: " . . . Grantor and Grantor's invitees may utilize those portions of EASEMENT PARCEL 2 as reasonably necessary . . . for the use of Grantor and Grantor's customers and invitees in connection with Grantor's business as it is being presently conducted . . . ." [Filing No. 10-2 at 11.]

Section 4 provides that the Plummers may not place obstructions on the 100 Line right of way, while section 5 allows for use of the right of way consistent with how it was used for the Plummers' engine repair business at the time the Amendment was reached in 1999. [*See* Filing No. 100 at 8-9 (summary judgment order excerpting and discussing these provisions).] The Plummers have provided no evidence to suggest that the air conditioner, storage unit, or scrap pile are anything other than impermissible obstructions under section 4 of the Amendment. Rather, the Plummers' response brief only discusses its ability to place vehicles on the easement as part of their business. The Court finds that Panhandle's proposed exemption of the automobiles and trailer from permanent removal sufficiently protects the Plummers' concerns raised in their response brief and their "contractual right to conduct their business" under section 5. The Court therefore **OVERRULES** the Plummers' final objection to the proposed permanent injunction as amended by Panhandle's reply submission. [Filing No. 132-1 at 4-5.]

### III.
### CONCLUSION

As the Court held in its Order on summary judgment, Panhandle is entitled to a permanent injunction to protect its property rights to the pipeline rights of way and ensure that it may comply with its regulatory requirements. The Court has reviewed the entirety of Panhandle's amended proposed final injunction and finds that it is sufficient in particularity and scope to accomplish these goals while still respecting the Plummers' rights under the 1999 agreements. The Court therefore **OVERRULES** the Plummers' objections as detailed above and will issue, by separate

Order, the final injunction attached to Panhandle's reply brief, [Filing No. 132-1], along with the clarifying photographic exhibits, [Filing No. 124-1 to Filing No. 124-16], except that the diagram found at Filing No. 124-4 will be replaced with the updated diagram found at Filing No. 132-3. Finally, the Court will remove the record citations from the permanent injunction as unnecessary and in violation of Rule 65(d)(1)(C). The injunction will enter contemporaneously with the Court's Order on attorney's fees and final judgment in Panhandle's favor.

Date: 10/22/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**